Slip Op. 12-32

UNITED STATES COURT OF INTERNATIONAL TRADE

| | | |
|---|---|---|
| UNITED STATES, | : | |
| Plaintiff, | : | |
| v. | : | Court No. 11-00138 |
| COUNTRY FLAVOR CORP., | : | |
| Defendant. | : | |

[Denying Motion for Entry of Default Judgment, without prejudice]

Dated: March 15, 2012

    <u>Stephen C. Tosini</u>, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Plaintiff.  With him on the brief were <u>Tony West</u>, Assistant Attorney General, Civil Division; and <u>Jeanne Davidson</u>, Director, and <u>Patricia M. McCarthy</u>, Assistant Director, Commercial Litigation Branch.

# OPINION

RIDGWAY, Judge:

    The Government commenced this action against Country Flavor Corporation and its surety, International Fidelity Insurance Company, seeking unpaid antidumping duties pursuant to 19 U.S.C. § 1505 (2006),[1] and unpaid antidumping duties and penalties pursuant to 19 U.S.C. § 1592, related to 13 entries of frozen fish fillets that Country Flavor imported from Vietnam in 2006.

    According to the Government, the fish fillets at issue were a species known as *pangasius*, and thus were subject to the 2003 antidumping duty order covering certain frozen fish fillets from Vietnam.  *See generally* Notice of Antidumping Duty Order: Certain Frozen Fish Fillets from the

---

[1]All statutory citations herein are to the 2006 edition of the United States Code, and all citations to regulations are to the 2006 edition of the Code of Federal Regulations.

Socialist Republic of Vietnam, 68 Fed. Reg. 47,909 (Aug. 12, 2003) ("Antidumping Duty Order");

*see also* Certain Frozen Fish Fillets From the Socialist Republic of Vietnam: Final Results of

Antidumping Duty Administrative Review and Partial Rescission, 73 Fed. Reg. 15,479 (March 24,

2008) ("Final Results of Administrative Review") (final results of administrative review for review

period August 1, 2005 through July 31, 2006). However, the Customs Form 7501 entry summaries

filed by Country Flavor identified the merchandise as "broadhead," a species of fish not subject to

the antidumping duty order. The Government contends that the asserted misstatements in the entry

summaries are attributable to negligence on Country Flavor's part.

After Country Flavor failed to enter an appearance by counsel and failed to plead or

otherwise defend itself within 21 days of being served with the summons and complaint, the Clerk

of the Court entered Country Flavor's default. *See* Entry of Default (July 1, 2011); USCIT R.

12(a)(1)(B)(i). Thereafter, the Government settled with Country Flavor's surety, and the surety was

dismissed with prejudice from this action. *See* Order (Sept. 16, 2011).

Now pending before the Court is the Government's Motion for Entry of Default Judgment.

*See* Plaintiff's Motion for Entry of Default Judgment ("Motion for Default Judgment"). The

Government requests a default judgment against Country Flavor in the sum of $617,562.00 as a civil

penalty for negligence, pursuant to 19 U.S.C. § 1592(a) and (c), as well as $34,363.45 (together with

prejudgment interest) for lost revenue pursuant to 19 U.S.C. § 1592(d). *See id.* at 6, 7.[2]

---

[2]Although the complaint includes claims against Country Flavor under both 19 U.S.C. §§ 1505 and 1592, the Government's Motion for Default Judgment is addressed solely to the claims under 19 U.S.C. § 1592.

Jurisdiction lies under 28 U.S.C. § 1582. For the reasons set forth below, the Motion for

Entry of Default Judgment must be denied. However, the Government may seek to cure the defects

in its case and then renew its request for relief.

## I. <u>Background</u>

In May and June 2006, Country Flavor imported 13 entries of frozen fish fillets from

Vietnam, which were identified on the Customs Form 7501 entry summaries that Country Flavor

filed as "broadhead," a species of fish not subject to any antidumping duties. *See* Complaint ¶¶ 9,

10; Motion for Default Judgment at 2, 5; Declaration ¶¶ 2, 3.[3] After testing samples from each of

the 13 entries, however, the Bureau of Customs and Border Protection[4] determined that the

merchandise at issue was actually a different species, known as *pangasius*. *See* Complaint ¶¶ 11,

12; Motion for Default Judgment at 2; Declaration ¶¶ 4, 5.[5] As such, the 13 entries were covered

by the 2003 antidumping duty order on certain frozen fish fillets from Vietnam, and were subject

to antidumping duties at the Vietnam-wide rate of 63.88%. *See* Complaint ¶¶ 8, 12; Motion for

Default Judgment at 1-2; Declaration ¶ 5; Antidumping Duty Order, 68 Fed. Reg. 47,909; Final

Results of Administrative Review, 73 Fed. Reg. 15,479.

---

[3] Appended to the Government's motion is a declaration executed by the Fines, Penalties, and Forfeitures Officer for the Bureau of Customs and Border Protection in Los Angeles, California.

[4] The Bureau of Customs and Border Protection – part of the U.S. Department of Homeland Security – is commonly known as U.S. Customs and Border Protection and is referred to as "Customs" herein.

[5] Apparently *pangasius* is more commonly known as "basa," "tra," "sutchi," "swai," and "Vietnamese catfish." *See* Motion for Default Judgment at 1; Declaration ¶ 5; Antidumping Duty Order, 68 Fed. Reg. at 47,909.

In early July 2006, Customs sent Country Flavor a Notice of Action with respect to 11 of the 13 entries at issue, stating Customs' intent to assess antidumping duties and demanding that Country Flavor pay antidumping duty cash deposits on the 11 entries at the 63.88% Vietnam-wide rate. *See* Complaint ¶¶ 13, 14; Motion for Default Judgment at 2; Declaration ¶ 8.  Customs liquidated the 11 entries in June 2008, assessing duties at the rate of 63.88%.  *See* Complaint ¶ 15; Motion for Default Judgment at 2.  The other two of the 13 entries had been liquidated earlier, without regard to antidumping duties, in March and April 2007. *See* Complaint ¶ 16; Motion for Default Judgment at 2; Declaration ¶ 8.

In late January 2011, Customs issued a pre-penalty notice to Country Flavor in the amount of $617,562.00, based on Country Flavor's alleged negligence in declaring the fish as "broadhead" (rather than *pangasius*) in the entry summaries filed with Customs. *See* Declaration ¶ 9; Complaint ¶ 17; Motion for Default Judgment at 3.  According to the complaint, the $617,562.00 figure represents "two times the amount of lost revenue." *See* Complaint ¶ 27; *see also* Motion for Default Judgment at 6; Declaration ¶ 9.  Elsewhere, the complaint states that the unpaid antidumping duties on the 13 entries at issue totaled $305,445.95.  *See* Complaint ¶ 29; *but see* Motion for Default Judgment at 3 (indicating that the unpaid antidumping duties totaled $308,781.23); Declaration ¶ 10 (same).

In early February 2011, Customs issued a notice of penalty and demand for payment to County Flavor. *See* Motion for Default Judgment at 3; Complaint ¶ 17; Declaration ¶ 11.  Country Flavor failed to respond to the pre-penalty notice, the penalty notice, and the demand for payment, and has paid none of the antidumping duties and civil penalties owed on the 13 entries.  *See*

Complaint ¶ 18; Motion for Default Judgment at 3; Declaration ¶¶ 12, 14.

International Fidelity Insurance Company served as Country Flavor's surety for the entries in question. Specifically, International Fidelity had issued a continuous entry bond to Country Flavor, promising to pay all duties, taxes, and fees owed during the period at issue in this action, up to a maximum of $100,000.00. *See* Complaint ¶ 6; Declaration ¶ 13. Of that sum, the surety paid $6,582.22 for "antidumping duties and mandatory interest upon one of the 13 subject entries" before this action was commenced. *See* Complaint ¶ 19; *see also id.* ¶ 6. In addition, the surety had issued eight single transaction bonds for entries of merchandise subject to this action, promising to pay all duties, taxes, and fees owed on the specified entries, up to varying amounts. *See* Complaint ¶ 7; Declaration ¶ 13. According to the complaint, none of the single transaction bonds had been exhausted at the time this action was commenced; and the remaining single transaction bond coverage then totaled $174,908.67. *See* Complaint ¶ 7.

International Fidelity paid $274,417.78 in duties to settle the Government's claims against it, in early August 2011; and the surety was subsequently dismissed with prejudice from this action. *See* Motion for Default Judgment at 3; Order (Sept. 16, 2011); Declaration ¶ 13. In the meantime, the Clerk of the Court entered Country Flavor's default. *See* Entry of Default (July 1, 2011).

## II. Analysis

When a defendant has been found to be in default, all well-pled facts in the complaint are taken as true, for purposes of establishing the defendant's liability. *See* 10 J. Moore *et al.*, Moore's Federal Practice § 55.32[1][a], p. 55-43 (3d ed. 2011) ("Moore's Federal Practice"). An entry of default alone, however, does not suffice to entitle a plaintiff to the relief that it seeks. Even after an

entry of default, "it remains for the court to consider whether the unchallenged facts constitute a

legitimate cause of action, since a party in default does not admit mere conclusions of law." *See*

10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2688, p. 63 (3d ed. 1998)

("Wright & Miller"); *see also* 10 Moore's Federal Practice § 55.32[1][b], p. 55-44. Accordingly,

in the case at bar, the threshold issue presented is whether the well-pled facts set forth in the

Government's complaint establish Country Flavor's liability under 19 U.S.C. § 1592 for a civil

penalty for negligent misrepresentation, as well as its liability for unpaid antidumping duties, as the

Government contends.

Under 19 U.S.C. § 1592(a), it is unlawful for any person – by negligence, gross negligence,

or fraud – to "enter, introduce, or attempt to enter or introduce any merchandise into the commerce

of the United States" by means of any material and false document, data, information, statement, or

act, or any material omission. *See* 19 U.S.C. § 1592(a)(1)(A); United States v. Inn Foods, Inc., 560

F.3d 1338, 1342 n.4 (Fed. Cir. 2009). Where, as here, a party's actions are alleged to be the result

of negligence and to have affected the assessment of duties, a violation of 19 U.S.C. § 1592(a) "is

punishable by a civil penalty in an amount not to exceed . . . the lesser of . . . (i) the domestic value

of the merchandise, or (ii) two times the lawful duties, taxes, and fees of which the United States

[was] deprived." *See* 19 U.S.C. § 1592(c)(3)(A)(i)-(ii). In the case at bar, the Government asks that

the requested default judgment against Country Flavor include a civil penalty in the amount of

$617,562.00, which the Government asserts is "the statutory two times lost revenue maximum

amount for negligence." *See* Motion for Default Judgment at 6, 7; *see also id.* at 3.[6]

In an action to recover a civil penalty under 19 U.S.C. § 1592 where the violation is alleged

to be the result of negligence, the statute provides that "the United States shall have the burden of

proof to establish the act or omission constituting the violation, and the alleged violator shall have

the burden of proof that the act or omission did not occur as a result of negligence." *See* 19 U.S.C.

§ 1592(e)(4); *see generally* <u>United States v. Ford Motor Co.</u>, 463 F.3d 1267, 1279 (Fed. Cir. 2006).

All issues are decided by the court *de novo*, including the amount of any civil penalty. *See* 19

U.S.C. § 1592(e)(1); *see also* <u>United States v. Nat'l Semiconductor Corp.</u>, 547 F.3d 1364, 1370

(Fed. Cir. 2008) (explaining that "the amount [of a civil penalty] is decided *de novo* by the Court

of International Trade").

In addition to a civil penalty for Country Flavor's alleged negligent misrepresentations, the

Government's motion further requests that the default judgment include unpaid antidumping duties.

*See* Motion for Default Judgment at 6, 7. Where the United States has been deprived of duties "as

a result of a violation of [19 U.S.C. § 1592(a)]," 19 U.S.C. § 1592(d) provides that "the Customs

Service shall require that such lawful duties, taxes, and fees be restored, *whether or not a monetary*

*penalty is assessed.*" *See* 19 U.S.C. § 1592(d) (emphasis added). The recovery of such unpaid

duties does not constitute a penalty. *See* <u>United States v. Inn Foods</u>, 560 F.3d at 1348.

Here, the Government invokes 19 U.S.C. § 1592(d) and requests a default judgment against

Country Flavor for unpaid duties in amount of $34,363.45, which is said to be the balance of the

---

[6]Prejudgment interest is not awarded on civil penalties imposed pursuant to 19 U.S.C. § 1592(a). *See* <u>United States v. Nat'l Semiconductor Corp.</u>, 547 F.3d 1364, 1369-71 (Fed. Cir. 2008).

antidumping duties on the 13 entries that remains "after subtracting the amount obtained through

settlement with International Fidelity." *See* Motion for Default Judgment at 6, 7. The Government

also seeks an award of prejudgment interest on that sum. *See id.* at 6, 7 (*citing* United States v.

Matthews, 31 CIT 2075, 2084 n.10, 533 F. Supp. 2d 1307, 1315 n.10 (2007) (relying on 19 U.S.C.

§ 1677g and assessing prejudgment interest on unpaid antidumping duties), *aff'd*, 329 Fed. Appx.

282 (Fed. Cir. 2009)).

    As explained above, because Country Flavor has defaulted, all well-pled facts in the

complaint are accepted as true for purposes of establishing Country Flavor's liability. *See* 10A

Wright & Miller § 2688, pp. 58-61; Finkel v. Romanowicz, 577 F.3d 79, 83-84 & n.6 (2d Cir. 2009)

(*citing*, *inter alia*, Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). Thus, if the

well-pled facts in the Government's complaint establish Country Flavor's liability for negligent

misrepresentation and unpaid antidumping duties, all that remains is for the Court to determine, *de

novo*, the amount of the civil penalty to be imposed and the amount of unpaid antidumping duties.

*See* 19 U.S.C. § 1592(e)(1). In doing so, the Court may look beyond the complaint, if necessary,

to investigate any matter or to determine appropriate relief. *See* USCIT R. 55(b).

## A.  Country Flavor's Liability

    The well-pled facts in the complaint establish that Country Flavor was the importer of record

for the specified 13 entries of fish fillets from Vietnam. *See* Complaint ¶¶ 3, 9; *see also* Motion for

Default Judgment at 2. Similarly, the well-pled facts in the complaint establish that – although the

Customs Form 7501 entry summaries submitted by Country Flavor identified the frozen fish fillets

at issue as "broadhead" (a species of fish not subject to any antidumping duties) – the imported

merchandise actually was *pangasius*, and thus was subject to antidumping duties under the 2003

antidumping duty order, at the rate of 63.88%.  *See* Complaint ¶¶ 8, 10, 12; *see also* Motion for

Default Judgment at 1-2; Antidumping Duty Order, 68 Fed. Reg. 47,909; Final Results of

Administrative Review, 73 Fed. Reg. 15,479.

     Country Flavor's incorrect identification of the merchandise as "broadhead," rather than

*pangasius*, on the relevant entry summaries constituted – for purposes of 19 U.S.C. § 1592(a)(1)(A)

– false statements that were used to enter the merchandise into the commerce of the United States.

Moreover, those false statements were "material" within the meaning of 19 U.S.C. § 1592(a)(1)(A),

in light of their potential "'to influence Customs' decision in assessing duties.'"  *See* United States

v. Matthews, 31 CIT at 2080, 533 F. Supp. 2d at 1312 (*quoting* United States v. Thorson Chemical

Corp., 16 CIT 441, 448, 795 F. Supp. 1190, 1196 (1992)); *see also* 19 C.F.R. Part 171, App. B § (B)

(definition of "material" in Customs' "Guidelines for the Imposition and Mitigation of Penalties for

Violations of 19 U.S.C. 1592").

     Finally, the well-pled facts set forth in the complaint establish that Country Flavor has failed

to pay the civil penalty that Customs assessed.  *See* Complaint ¶ 18; *see also* Motion for Default

Judgment at 3.  Nor has Country Flavor paid any of the applicable antidumping duties.  *See*

Complaint ¶ 18; *see also* Motion for Default Judgment at 3.

     As outlined above, the well-pled facts set forth in the complaint – which are admitted by

virtue of Country Flavor's default – establish the "act or omission constituting the violation" of 19

U.S.C. § 1592(a)(1)(A) alleged by the Government.  *See* 19 U.S.C. § 1592(e)(4).  Country Flavor

therefore bears "the burden of proof that the act or omission did not occur as a result of negligence."

*See id.* But Country Flavor has defaulted. Country Flavor thus has made no attempt to demonstrate that it acted with reasonable care.

In sum, the Government has established Country Flavor's liability, demonstrating that the importer negligently violated 19 U.S.C. § 1592(a) and failed to pay applicable antidumping duties. As discussed below, however, the Government has failed to offer the proof required to establish either the amount of the civil penalty to be imposed or the amount of antidumping duties that remain unpaid for which Country Flavor is liable.[7]

### B. The Relief Requested By the Government

While the effect of a default is to admit all well-pled facts in the complaint for purposes of

---

[7]As explained in United States v. Jean Roberts, "[b]efore seeking to recover a penalty in the Court of International Trade, Customs must perfect its penalty claim in the administrative process required by [19 U.S.C. § 1592]." *See generally* United States v. Jean Roberts of California, Inc., 30 CIT 2027, 2030-35 (2006) (analyzing the effect on litigation seeking to recover civil penalty of "various errors made by Customs in conducting the [underlying] administrative proceeding under Section [1592]"); *see also* 19 U.S.C. § 1592(b) (setting forth required administrative procedures, including issuance of pre-penalty notice and notice of penalty). The Government here has never filed with the Court the underlying administrative record, including copies of the "prepenalty notice, demands for duties, and . . . penalty notice" cited in the complaint. *See* Complaint ¶ 17.

If the Government elects to renew its Motion for Default Judgment, copies of all supporting documentation should be submitted, including, *inter alia*, all documents cited in the complaint and all relevant documentation from the administrative penalty proceedings, as well as all evidence that may bear on aggravating or mitigating circumstances (as discussed in note 8, below). *See* United States v. Scotia Pharmaceuticals Ltd., 33 CIT ____, ____, 2009 WL 1410437 * 1 (2009) (criticizing Government's initial failure to "submit, in support of its application for judgment by default, a complete record of the administrative penalty proceedings that were conducted before [Customs]"); *see also, e.g.,* United States v. Inner Beauty Int'l (USA) Ltd., 35 CIT ____, ____, 2011 WL 6009239 * 2 (2011) (citing country of origin declarations attached to entry summaries for the eight entries at issue, designated "Pl's Mot. exhibits A-H"); United States v. Jean Roberts, 30 CIT at 2028-29 (analyzing text of, *inter alia*, "Pre-Penalty Notice" and "Notice of Penalty," filed in response to court's request).

establishing liability, "a default does not concede the amount demanded." *See* 10A Wright & Miller

§ 2688, p. 67; *see also* 10 Moore's Federal Practice § 55.32[1][c], p. 55-44 to 55-45 (stating that

defaulting party "does not admit the allegations in the claim as to the amount of damages"). Instead,

the plaintiff bears the burden of proving the extent of the relief to which it is entitled. *See* 10

Moore's Federal Practice § 55.32[1][d], p. 55-45. The court is obligated to ensure that there is an

adequate evidentiary basis for any relief awarded. *See* <u>Transatlantic Marine Claims Agency, Inc.

v. Ace Shipping Corp.</u>, 109 F.3d 105, 111 (2d Cir. 1997) (*quoting* <u>Fustok v. ContiCommodity

Servs., Inc.</u>, 873 F.2d 38, 40 (2d Cir. 1989)) (explaining that court must ensure that there is basis for

relief awarded).

Thus, even when liability is established by default, the court must undertake further inquiry

to ascertain the appropriate relief, except in those relatively rare cases where the claim is "for a sum

certain or for a sum that can be made certain by computation." *See* 10 Moore's Federal Practice §

55.32[2][c], p. 55-48; *id.*, § 55.32[2][a], p. 55-47 (noting that "[m]ost often . . . , claims are not

sufficiently certain"); USCIT R. 55(b).[8] However, an evidentiary hearing is not necessarily required.

---

[8]The Government contends that the relief it seeks in this case is "a sum certain or . . . a sum that can be made certain by computation" within the meaning of Rule 55(b). *See* Motion for Default Judgment at 5, 6; USCIT R. 55(b). To the contrary, the Government's claims for relief here are uncertain due both to "the nature of the claims" and to "errors and discrepancies in the pleadings and affidavits." *See* 10 Moore's Federal Practice § 55.32[2][a], p. 55-47.

Because 19 U.S.C. § 1592(e)(1) requires a court to make a *de novo* determination as to the amount of any civil penalty, the amount of the penalty cannot be considered "a sum certain or . . . a sum that can be made certain by computation." *See* <u>United States v. Inner Beauty Int'l</u>, 35 CIT at

_____, 2011 WL 6009239 * 4-5; *see also* <u>United States v. Nat'l Semiconductor Corp.</u>, 547 F.3d at 1369-70 (rejecting Government's argument that prejudgment interest should be awarded on civil penalties, reasoning that the amount of a penalty is "uncertain" – and therefore an inappropriate

_____

basis for calculating interest – prior to a final decision by Court of International Trade; and observing that "[n]ot only do past cases state that nothing requires the court to grant Customs' request for the maximum penalty, they also explain that the court should not presume that the maximum is warranted").

As the Court of Appeals has observed, "Congress has delegated to the judiciary *discretion* to determine the amount of civil penalties under [19 U.S.C. § 1592]." *See* United States v. Ford Motor Co., 463 F.3d 1286, 1290 (Fed. Cir. 2006) (emphasis added); *see also* United States v. Nat'l Semiconductor Corp., 547 F.3d at 1370 (emphasizing that, in determining appropriate amount of a civil penalty, the court enjoys "the broad discretion allowed by the statute and the Complex Machine Works analysis"); United States v. Ford Motor Co., 463 F.3d at 1285 (noting that "[a] trial court has considerable discretion to award civil penalties within the statutory range"). The fact that the penalties set forth in 19 U.S.C. § 1592(c) are captioned "[m]aximum penalties" further underscores the discretion of the court to impose a penalty in an amount that is less than the maximum that the Government seeks here. *See* 19 U.S.C. § 1592(c) (captioned "Maximum penalties").

The case law similarly reflects the role of judicial discretion in determining the appropriate amount of a civil penalty. *See, e.g.*, United States v. Complex Machine Works Co., 23 CIT 942, 947-50, 83 F. Supp. 2d 1307, 1313-15 (1999) (identifying factors relevant to determining appropriate amount of civil penalty) (*discussed in* United States v. Inn Foods, 560 F.3d at 1349-50, *aff'g*, 31 CIT 1474, 1488-89, 515 F. Supp. 2d 1347, 1361-62 (2007); United States v. Nat'l Semiconductor Corp., 547 F.3d at 1367-70; United States v. Nat'l Semiconductor Corp., 496 F.3d 1354, 1356-59, 1361-62 (Fed. Cir. 2007); United States v. Ford Motor Co., 463 F.3d at 1285; United States v. Matthews, 31 CIT at 2085-86 & n.15, 533 F. Supp. 2d at 1316-17 & n.15; United States v. Jean Roberts, 30 CIT at 2039-40; United States v. New-Form Mfg. Co., 27 CIT 905, 919-24, 277 F. Supp. 2d 1313, 1327-32 (2003)); *see also* 19 C.F.R. Part 171, App. B §§ (G)-(H) (non-exclusive list of mitigating factors and aggravating factors, in Customs' "Guidelines for the Imposition and Mitigation of Penalties for Violations of 19 U.S.C. 1592") (*discussed in, inter alia*, United States v. Inner Beauty Int'l, 35 CIT at _____, 2011 WL 6009239 * 5-6; United States v. Jean Roberts, 30 CIT at 2039-40).

The Government's claim for unpaid duties similarly cannot fairly be characterized as "a sum certain or . . . a sum that can be made certain by computation." *See* USCIT R. 55(b). As discussed in section II.B.2 below, there are inconsistencies in the documentation submitted by the Government in an effort to support its claim for unpaid antidumping duties. Under these circumstances, the Government's claim for unpaid duties cannot be considered a claim for "a sum certain." *See, e.g.*, KPS & Assocs. v. Designs by FMC, Inc., 318 F.3d 1, 17-21 (1st Cir. 2003) (discussing distinction between claims for "a sum certain" and other claims, and holding that claim there at issue was not for "a sum certain" where there were patent discrepancies between damages claimed in body of complaint and damages requested in *ad damnum* clause, as well as significant arithmetical errors

It may be possible to determine the appropriate relief based on affidavits and other materials. *See* 10 Moore's Federal Practice § 55.32[2][c], p. 55-48.

As detailed below, the existing record in this matter provides no basis for determining either the appropriate amount of the civil penalty to be imposed on Country Flavor or the amount of the antidumping duties that remains unpaid. The Government's Motion for Default Judgment therefore must be denied.

### 1.  The Amount of the Civil Penalty

In its Motion for Entry of Default Judgment, the Government correctly observes that "[a] negligent violation of section 1592(a) is punishable by a civil penalty not to exceed the lesser of the domestic value of the merchandise or two times the lawful duties, taxes, and fees of which the United States has been deprived." *See* Motion for Default Judgment at 3-4 (*citing* 19 U.S.C. § 1592(c)(3)). Elsewhere in the motion, the Government argues that it is entitled to a default judgment against Country Flavor for a civil penalty based on negligence, in the sum of $617,562.00, which the Government asserts is "the statutory two times lost revenue maximum amount for negligence." *See* Motion for Default Judgment at 6, 7.  Similarly, the declaration appended to the motion attests that a civil penalty in the amount of $617,562.00 "represents two times the loss of revenue," and that "[a] penalty of $617,562.00 . . . remains outstanding." *See* Declaration ¶¶ 9, 15.  However, nowhere does the motion or the attached declaration state that a civil penalty in the amount of "two times the lawful duties, taxes, and fees of which the United States [was] deprived" would be less than a

_____

in affidavit filed with complaint).

penalty in the amount of "the domestic value of the merchandise," which is what the statute requires

in a case such as this. *See* 19 U.S.C. § 1592(c)(3)(A).

Moreover, although the *complaint* makes the representation that "a civil penalty in the

amount of $617,562.00 . . . is less than the dutiable value of the subject merchandise," the complaint

does not specify "the dutiable value of the subject merchandise" (or, more importantly, in the words

of the statute, "the domestic value of the merchandise," to the extent that is different). *See*

Complaint ¶ 27; 19 U.S.C. § 1592(c)(3)(A).[9]  Nor has the Government proffered evidence to

---

[9]The statement in the complaint that "a civil penalty in the amount of $617,562.00 . . . is less than *the dutiable value of the subject merchandise*" raises at least two issues, in addition to the Government's substitution of "the dutiable value" for "the domestic value," which is the terminology that Congress employed in the statute. *Compare* Complaint ¶ 27 (emphasis added) *with* 19 U.S.C. § 1592(c)(3)(A)(i).

The first issue concerns the application of Iqbal and Twombly in civil penalty cases like this one. *See generally* Ashcroft v. Iqbal, 556 U.S. 662, ____, 129 S. Ct. 1937, 1949-50 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554-63 (2007).  In particular, there is some authority for the proposition that the domestic value of the merchandise at issue is "a fact essential to the court's *de novo* determination of the amount of any penalty" in a civil penalty case, and that the Government's complaint therefore "must allege the domestic value of the merchandise as a well-pled fact in order to obtain a default judgment." *See* United States v. Callanish Ltd., 34 CIT ____, ____, 2010 WL 4340463 * 3-4 (2010).

In United States v. Callanish, a civil penalty action involving an alleged fraudulent scheme to import "evening primrose oil" into the United States in violation of 19 U.S.C. § 1592, the court denied the Government's motion for default judgment.  The court there reasoned:

> The amended complaint seeks a penalty of $17,734,926, which [the Government] alleges to be the domestic value of the fifty-two consumption entries of [evening primrose oil] that it alleges to have been fraudulently imported in violation of the statute. *The complaint lacks any well-pled fact concerning the domestic value of the merchandise or how that value was determined.* [The Government] provides only the conclusory statement of the domestic value of the imported [evening primrose oil]. The mere allegation of an amount offered as the "domestic value," absent anything more, does not constitute a well-pled fact.

_____

United States v. Callanish, 34 CIT at ____, 2010 WL 4340463 * 4 (emphasis added; citations and footnote omitted) (relying on, *inter alia*, Twombly, 550 U.S. at 555-56).

The complaint in the case at bar does not even include a statement that "a civil penalty in the amount of $617,562.00 . . . is less than *the domestic value of the merchandise*," much less a statement specifying *the dollar amount* of that domestic value (which was, in any event, found to be insufficient in United States v. Callanish). Certainly the complaint here does not include as a well-pled fact "how [the domestic value of the 13 entries] was determined," which is what United States v. Callanish seems to require. *See* United States v. Callanish, 34 CIT at ____, 2010 WL 4340463 * 4; *see generally* United States v. Callanish Ltd., 36 CIT ____, ____, 2012 WL 286857 (2012).

On the other hand, Iqbal, Twombly, and their progeny concern the interpretation and application of Federal Rule of Civil Procedure 8(a)(2). *See, e.g.,* Iqbal, 556 U.S. at ____, 129 S. Ct. at 1949 (quoting Fed. R. Civ. P. 8). Federal Rule of Civil Procedure 8 provides:

Rule 8.  General Rules of Pleading

(a) Claim for Relief.  A pleading that states a claim for relief must contain:

    (1)    a short and plain statement of the grounds for the court's jurisdiction . . . ;

    (2)    *a short and plain statement of the claim showing that the pleader is entitled to relief*; and

    (3)    a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a) (emphasis added) (paralleling USCIT R. 8(a)). In other words, the holdings of Iqbal and Twombly arguably are limited to a complaint's allegations concerning *liability*, and thus do not extend to the *relief sought* (which is addressed in Rule 8(a)(3)). Such a reading is supported by Iqbal's summary of Twombly:

Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . .

In keeping with these principles a court considering a motion to dismiss can choose

to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they *plausibly* give rise to an *entitlement to relief*.

Iqbal, 556 U.S. at ____, 129 S. Ct. at 1949-50 (emphases added).

"[L]egal conclusions" are not a concern here; the question is the sufficiency of the complaint's "well-pleaded factual allegations" and "whether they plausibly give rise to an entitlement to relief." It can be argued that whether or not a complaint in a civil penalty case specifies the amount of the domestic value of the merchandise and how that value was determined will shed no light on the *plausibility* of the Government's *entitlement* to relief; rather, such information goes instead to the *amount* of relief that may be awarded. Under this theory, Iqbal and Twombly arguably would not require that the complaint in a civil penalty case include "well-pled facts" concerning the domestic value of the merchandise and how that value was determined.

This important and timely issue merits much greater attention than the preliminary discussion outlined above. If the Government renews its Motion for Default Judgment, the motion should analyze this question carefully and in detail (specifically addressing, *inter alia*, whether the complaint in this matter must be amended to include "well-pled fact[s] concerning the domestic value of the merchandise [and] how that value was determined"). *See* United States v. Callanish, 34 CIT at ____, 2010 WL 4340463 * 4.

The second issue concerns the means of establishing "the domestic value of the merchandise," without regard to whether (and, if so, how) the domestic value and the means of determining that value must be pled in the complaint. As with the issue of Iqbal and Twombly above, the Court has not undertaken to independently research this matter. However, there is ample authority for the proposition that "the dutiable value of the merchandise" (the terminology used in the complaint here) is not the same as "the domestic value of the merchandise." *See, e.g.*, United States v. Pan Pacific Textile Group, Inc., 30 CIT 138, 139-40 & n.2 (2006) (stating that "[d]utiable value and domestic value are not equivalent measures of entered merchandise," and defining "domestic value"). Indeed, the civil penalty statute itself distinguishes between the "domestic value" and the "dutiable value" of merchandise. *Compare* 19 U.S.C. § 1592(c)(3)(A)(i) (referring to "the domestic value of the merchandise") *with* 19 U.S.C. § 1592(c)(3)(B) (referring to "the dutiable value of the merchandise"); *see also* S. Rep. No. 95-778, at 20 (1978), *reprinted in* 1978 U.S.C.C.A.N. 2211, 2231-32 (explaining that "[d]omestic value is generally equivalent to retail value while *dutiable value* is generally equivalent to wholesale value").

Moreover, several recent decisions of this court have focused on the proper means of

establish "the domestic value of the merchandise." *See* 19 U.S.C. § 1592(c)(3)(A)(i).  In the absence

of such evidence, it is not possible to make the determination that the statute requires – that is, to

determine whether the civil penalty in this action is capped by "the domestic value of the

merchandise" or by "two times the lawful duties . . . of which the United States [was] deprived" (as

the Government contends).  *See* 19 U.S.C. § 1592(c)(3)(A)(i)-(ii).

Further, even if the Government had established "the domestic value of the merchandise"

(which it has not), it nevertheless would not be possible to determine the statutory cap on the civil

penalty to be imposed in this case, because that determination requires a comparison of "the

domestic value of the merchandise" to the figure that reflects "two times the lawful duties . . . of

which the United States [was] deprived." *See* 19 U.S.C. § 1592(c)(3)(A)(i)-(ii).  And, as discussed

immediately below, the Government here has failed to establish the amount of unpaid antidumping

duties – that is, the amount of "the lawful duties . . . of which the United States [was] deprived."

*See* section II.B.2, *infra*.

Finally, even if one were to accept as true the complaint's representation that "two times the

--------

establishing "the domestic value of . . . merchandise" for purposes of a civil penalty action.  *See, e.g.*, United States v. Callanish, 34 CIT at _____ n.3, 2010 WL 4340463 * 4 n.3 (criticizing Government's failure to explain how Customs determined domestic value of merchandise at issue in civil penalty action, emphasizing that, "[f]rom exhibits to plaintiff's application for judgment by default, it appears that the amount of the 'domestic value' was derived by doubling the amounts for entered value as set forth on entry summaries for the [relevant] importations"); *see also* United States v. Callanish, 36 CIT at _____, 2012 WL 286857 * 4-5 (inferring from the Government's representations that "Customs construes 19 C.F.R. § 162.43 [governing appraisal of property that has been seized] to apply to an appraisal to determine domestic value for purposes of penalty assessment under 19 U.S.C. § 1592(c)(1)").

If the Government renews its Motion for Default Judgment, these issues also must be analyzed carefully and in detail.

amount of lost revenue" is, in fact, less than "the domestic value of the merchandise," a default

judgment for a civil penalty for negligence still could not enter because, as discussed in section

II.B.2 below, the Government has not established the amount of unpaid antidumping duties, *i.e.*, the

amount of the "lost revenue" or "the lawful duties . . . of which the United States [was] deprived"

– which is the basis for calculating the civil penalty that the Government seeks. *See* section II.B.2,

*infra*; 19 U.S.C. § 1592(c)(3)(A).

In short, in light of the Government's failure to establish either "the domestic value of the

merchandise" at issue or the amount of "the lawful duties . . . of which the United States [was]

deprived," the requested default judgment against Country Flavor for a civil penalty cannot enter.

*See* 19 U.S.C. § 1592(c)(3)(A)(i)-(ii).

## 2. The Amount of Unpaid Antidumping Duties

The Government's case on the amount of unpaid antidumping duties is no stronger than its

case on the amount of the civil penalty (discussed above). In its Motion for Entry of Default

Judgment, the Government implicitly asserts that, at the time this action was commenced, the unpaid

duties on the 13 entries at issue totaled $308,781.23. The declaration appended to the motion

explicitly so states. *See* Declaration ¶ 10 (attesting that Country Flavor "deprived the United States

of lawful anti-dumping duties in the amount of $308,781.23"). And the motion itself seeks entry

of a default judgment against Country Flavor for $34,363.45 in unpaid duties – a figure which, when

added to the $274,417.78 paid by the surety to secure its dismissal from this action, totals

$308,781.23. *See* Motion for Default Judgment at 3 (noting surety's payment of $274,417.78); *id.*

at 6, 7 (seeking entry of default judgment against Country Flavor for unpaid duties in the amount

of $34,363.45). However, the Government's current claims that the unpaid antidumping duties at issue in this action totaled $308,781.23 cannot be reconciled with the averments in the Government's complaint.

Specifically, the Government stated in its complaint that the unpaid antidumping duties totaled $305,445.95 – *not* $308,781.23. *See* Complaint ¶ 29 (stating that "Country Flavor is liable pursuant to 19 U.S.C. § 1592(d) for . . . unpaid duties in the amount of $305,445.95"). The Government's demand for relief in the complaint is to the same effect, seeking "lost duties in the amount of $305,445.95" – again, *not* $308,781.23. *See id.* at ¶ 4 of demand for relief. The Government's motion fails even to acknowledge, much less explain, this critical discrepancy.[10]

---

[10]As discussed above, the complaint itself specifies that the unpaid antidumping duties at issue totaled $305,445.95. *See* Complaint ¶ 29; *id.*, at ¶ 4 of demand for relief. However, the "Section 1592 Penalty Calculation Worksheet" which is attached to the complaint lists "Total ADs" (presumably "Total Antidumping Duties") as "$308,781.23." *See id.*, Att. A, at 2 (Section 1592 Penalty Calculation Worksheet). Thus, not only is there a significant discrepancy between the Government's complaint and its Motion for Default Judgment but, in addition, there is an internal inconsistency between the complaint itself and the documentation attached to the complaint.

In addition, it is worth noting that the $305,445.95 figure set forth in the complaint appears nowhere in the documentation attached to the complaint. *Compare* Complaint ¶ 29; *id.*, at ¶ 4 of demand for relief *with* Complaint, Att. A (Section 1505 Lost Revenue Calculation Worksheet and Section 1592 Penalty Calculation Worksheet).

Frankly, the complaint and the attached documentation (the "Section 1505 Lost Revenue Calculation Worksheet" and the "Section 1592 Penalty Calculation Worksheet") raise more questions than they answer – and reviewing those documents against the Government's Motion for Default Judgment compounds the confusion exponentially. For example, although the complaint and the motion state that antidumping duties were assessed at liquidation on 11 of the 13 entries, the Section 1505 Lost Revenue Calculation Worksheet attached to the complaint lists only 10 entries. *Compare* Complaint ¶ 15; Motion at 2 *with* Complaint, Att. A, at 1 (Section 1505 Lost Revenue Calculation Worksheet). No explanation is offered for this seeming discrepancy. Similarly, although – given the paucity of information provided to the Court – it is difficult to make heads or tails out of most of the figures on the two "Worksheets" attached to the complaint, it seems obvious

In light of the inconsistencies between the complaint and the Government's pending motion concerning the amount of unpaid antidumping duties at issue in this action, default judgment against Country Flavor for unpaid duties cannot enter. *See generally* 10 Moore's Federal Practice § 55.32[2][a], p. 55-47 (explaining that "errors and discrepancies in the pleadings and affidavits" may

---

that at least some of the figures are incorrect. Thus, for example, the figure listed on the Section 1505 Lost Revenue Calculation Worksheet as the "Correct Duty" for "Entry # 99116876" – *i.e.*, "$32,803.63" – appears to be clearly erroneous. For each of the other nine entries listed on the Worksheet, the figure in the "Correct Duty" column is the sum of the figure listed in the "Duty/Fees" column and the figure in the "Add'l AD" (presumably "Additional Antidumping Duties") column. This suggests that the figure listed in the "Correct Duty" column for "Entry # 99116876" actually should be $6,617.44 – and definitely not "$32,803.63," as the Government's Worksheet indicates.

In any event, if the Government renews its motion, it is obviously the Government's responsibility to adduce all documentation and other evidence necessary to make its case (whether or not the Court has expressly requested it), to thoroughly research and clearly present the applicable law on all relevant issues, and to ensure the accuracy of the entirety of its submission, both as to all facts and all law. If the Government fails to do so, its motion will once again be denied; and it would be a grave mistake indeed for the Government to assume that it will be accorded multiple bites at the apple.

If the Government renews its motion, the Government must clearly and thoroughly explain – and provide complete documentation to support – each and every figure in its motion, as well as each and every figure in its complaint and Attachment A thereto. Any inconsistencies, discrepancies, errors, and omissions must be clearly identified, explained, and remedied, and copies of all documentation necessary to support the clarifications and corrections must be supplied as well.

Among other issues (including, but not limited to, the numerous matters specifically identified herein), the Government must address Customs' allocation to specific, individual entries of all payments made by International Fidelity (and the basis for each of those allocations), including the $6,582.22 paid for "antidumping duties and mandatory interest upon one of the 13 subject entries" before this action was commenced, and the $274,417.78 paid to settle the Government's claims against the surety. *See* Complaint ¶ 19; *see also id.* ¶ 6; Motion for Default Judgment at 3; Order (Sept. 16, 2011); Declaration ¶ 13. In addition, the Government should determine and address – as a legal matter, and as practical matter – the present status of Country Flavor, particularly in light of the fact that, according to the complaint, "Country Flavor is currently dissolved." *See* Complaint ¶ 3.

necessitate court inquiry and thus preclude entry of default judgment); *see, e.g.*, KPS & Assocs. v.

Designs by FMC, Inc., 318 F.3d 1, 18-19 (1st Cir. 2003) (holding that district court erred in basing

damages decision on complaint and affidavit where there were obvious discrepancies between

damages claimed in body of complaint and damages requested in *ad damnum* clause, as well as

serious arithmetical errors in affidavit filed with complaint).[11]

---

[11]Rule 54(c) expressly provides that the relief granted by a default judgment cannot "differ in kind from, or exceed in amount, what is demanded in the pleadings." *See* USCIT R. 54(c). Thus, as a practical matter, "Rule 54(c) establishes a ceiling on the amount that may be awarded" in a default judgment. *See* 10 Moore's Federal Practice § 55.34[1], p. 55-62. "A default judgment in violation of Rule 54(c) is void, must be reversed on appeal, and is subject to collateral attack." *See* 10 Moore's Federal Practice § 55.34[1], p. 55-63.

In the case at bar, one conceivably could argue that Rule 54(c) limits the Government's total award for unpaid antidumping duties here to a maximum of $305,445.95 (the figure specified in the complaint), which – in light of the surety's payment of $274,417.78 in duties – would appear to cap Country Flavor's liability for unpaid duties at $31,028.17 (rather than the $34,363.45 that the Government claims in its Motion for Default Judgment). *See* USCIT R. 54(c); Complaint ¶ 29; *id.*, at ¶ 4 of demand for relief; Motion for Default Judgment at 3, 6-7 (stating amount of surety's payment and amount of Government's asserted claim against Country Flavor for unpaid duties).

However, a strict application of Rule 54(c) is not warranted in light of the specific circumstances of this case. The underlying purpose of Rule 54(c) is "to ensure that a party, before deciding not to defend the action, has notice as to the potential extent of the judgment." *See* 10 Moore's Federal Practice § 55.34[1], p. 55-62 to 55-63. Here, although the complaint itself states that the total unpaid antidumping duties amounted to $305,445.95, the "Section 1592 Penalty Calculation Worksheet" which is attached to the complaint reflects the higher ($308,781.23) figure. *Compare* Complaint ¶ 29; *id.*, at ¶ 4 of demand for relief *with id.*, Att. A, at 2 (Section 1592 Penalty Calculation Worksheet). Moreover, in alleging Country Flavor's liability for a civil penalty, the complaint specifies the amount of that penalty as "$617,562.00," which the complaint asserts is "equal to two times the amount of lost revenue" – in other words, two times $308,781.00. *See* Complaint ¶ 27. Further, the complaint identifies the 13 entries at issue as those imported by Country Flavor between May 10, 2006 and June 8, 2006, and specifies the antidumping duty rate applicable to those entries. *See* Complaint ¶¶ 8, 9. On these facts, Country Flavor could not credibly claim that it lacked notice that the unpaid antidumping duties at issue in this action could range as high as $308,781.23.

### III.  Conclusion

For the reasons set forth above, the Government's Motion for Entry of Default Judgment

must be denied, without prejudice.

A separate order will enter accordingly.

                                        /s/ Delissa A. Ridgway
                                    _____
                                            Delissa A. Ridgway
                                                   Judge

Dated:  March 15, 2012
            New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

| | | |
|---|---|---|
| UNITED STATES, | : | |
| Plaintiff, | : | |
| v. | : | Court No. 11-00138 |
| COUNTRY FLAVOR CORP., | : | |
| Defendant. | : | |

## ORDER

Upon consideration of Plaintiff's Motion for Entry of Default Judgment, and in accordance with the opinion of the Court issued this date in this matter, it is hereby

ORDERED that Plaintiff's motion is denied without prejudice; and it is further

ORDERED that, if Plaintiff intends to renew its Motion for Entry of Default Judgment, such motion shall be filed no later than April 18, 2012, with no extensions to be granted.

/s/ Delissa A. Ridgway
Delissa A. Ridgway, Judge

Dated:  March 15, 2012
        New York, New York