Slip Op. 12-65

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| UNITED STATES, | : |
|             *Plaintiff*, | : |
|             v. | :     Court No. 11-00138 |
| COUNTRY FLAVOR CORP., | : |
|             *Defendant*. | : |

[Granting Renewed Motion for Entry of Default Judgment]

Dated: May 22, 2012

    Stephen C. Tosini, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Plaintiff. With him on the brief were Stuart F. Delery, Acting Assistant Attorney General, Civil Division; and Jeanne Davidson, Director, and Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch.

## OPINION

RIDGWAY, Judge:

    Pending before the Court is Plaintiff's Renewed Motion for Entry of Default Judgment, in which the Government addresses various issues raised in Country Flavor I and once again requests a default judgment against defendant importer Country Flavor Corporation. *See* Plaintiff's Renewed Motion for Entry of Default Judgment ("Renewed Motion for Default Judgment"); United States v. Country Flavor Corp., 36 CIT ____, 825 F. Supp. 2d 1296 (2012) ("Country Flavor I").

    As Country Flavor I explained, the Government commenced this action against Country Flavor and its surety, International Fidelity Insurance Company, seeking unpaid antidumping duties and penalties related to 13 entries of frozen fish fillets that Country Flavor imported from Vietnam

in 2006.  *See generally* Country Flavor I, 36 CIT at ____, 825 F. Supp. 2d at 1298-99.  After Country Flavor failed to enter an appearance by counsel and failed to plead or otherwise defend itself within 21 days of being served with the summons and complaint, the Clerk of the Court entered Country Flavor's default.  *See* Entry of Default (July 1, 2011); *see generally* Country Flavor I, 36 CIT at ____, ____, 825 F. Supp. 2d at 1299, 1301.  The Government later settled with Country Flavor's surety, and the surety was dismissed with prejudice from the action.  *See* Order (Sept. 16, 2011); *see generally* Country Flavor I, 36 CIT at ____, ____, 825 F. Supp. 2d at 1299, 1301.  Thereafter, the Government sought entry of a default judgment against the remaining defendant, Country Flavor.  *See* Plaintiff's Motion for Entry of Default Judgment ("Motion for Default Judgment").  The Government's original Motion for Default Judgment was the subject of Country Flavor I.

      Country Flavor I ruled in favor of the Government on the issue of liability, concluding that the Government had established that Country Flavor misclassified each of the 13 subject entries of frozen fish fillets (depriving the United States of applicable antidumping duties), and, further, that Country Flavor's actions constituted negligent violations of 19 U.S.C. § 1592(a), which, in brief, prohibits the use of false statements to enter merchandise into the commerce of the United States.  *See* Country Flavor I, 36 CIT at ____, 825 F. Supp. 2d at 1302-03; 19 U.S.C. § 1592(a)(1)(A).[1]  Country Flavor I therefore held that Country Flavor is liable for a civil penalty as well as any applicable antidumping duties that remain unpaid.  *See* Country Flavor I, 36 CIT at ____, 825 F.

---

[1] All statutory citations herein are to the 2006 edition of the United States Code.  Similarly, all citations to regulations are to the 2006 edition of the Code of Federal Regulations.

Supp. 2d at 1302-03; *see also* 19 U.S.C. § 1592(c)(3)(A) (imposing civil penalty for negligent violation of § 1592(a), where violation affected assessment of duties); 19 U.S.C. § 1592(d) (providing for recovery of, *inter alia*, unpaid duties in cases where § 1592(a) was violated, whether or not civil penalty is imposed).

Country Flavor I nevertheless concluded that a default judgment could not enter, because the Government had not offered the proof required to establish the amount of the civil penalty to be imposed and the amount of antidumping duties that remains unpaid. *See generally* Country Flavor I, 36 CIT at \_\_\_\_, 825 F. Supp. 2d at 1303; *see also id.*, 36 CIT at \_\_\_\_, 825 F. Supp. 2d at 1305-08 (concerning amount of civil penalty); *id.*, 36 CIT at \_\_\_\_, 825 F. Supp. 2d at 1308-09 (concerning amount of antidumping duties that remains unpaid). The Government's Motion for Default Judgment therefore was denied without prejudice. *See generally id.*, 36 CIT at \_\_\_\_, \_\_\_\_, 825 F. Supp. 2d at 1299, 1310.

As set forth below, the Government's Renewed Motion for Default Judgment cures the defects in the Government's original motion. Accordingly, the Renewed Motion must be granted, and judgment by default entered against Country Flavor for a civil penalty in the amount of $617,562.00, as well as $28,984.75 in unpaid antidumping duties (together with prejudgment interest on that sum).

**I. Background**

A summary recitation of the facts of the case is necessary here because – as detailed below – the Government's Renewed Motion for Default Judgment corrects a number of misstatements made in its complaint, in its original Motion for Default Judgment, and in the declaration that the

Government filed in support of that motion ("Thierry Declaration I"). And a number of those misstatements of fact were reflected in Country Flavor I.

In May and June 2006, Country Flavor imported 13 entries of frozen fish fillets from Vietnam, which were identified on the Customs Form 7501 entry summaries that Country Flavor filed as "broadhead," a species of fish not subject to any antidumping duties. *See* Complaint ¶¶ 9, 10; Renewed Motion for Default Judgment at 2; Thierry Declaration I ¶¶ 2, 3. After testing samples from each of the 13 entries, however, the Bureau of Customs and Border Protection[2] determined that the merchandise at issue was actually a different species, known as *pangasius*. *See* Complaint ¶¶ 11, 12; Renewed Motion for Default Judgment at 2; Thierry Declaration I ¶¶ 4, 5.[3] As such, the 13 entries were covered by the 2003 antidumping duty order on certain frozen fish fillets from Vietnam, and were subject to antidumping duties at the Vietnam-wide rate of 63.88%. *See* Complaint ¶¶ 8, 12; Renewed Motion for Default Judgment at 1-2; Thierry Declaration I ¶ 5; Notice of Antidumping Duty Order: Certain Frozen Fish Fillets from the Socialist Republic of Vietnam, 68 Fed. Reg. 47,909 (Aug. 12, 2003); Certain Frozen Fish Fillets From the Socialist Republic of Vietnam: Final Results of Antidumping Duty Administrative Review and Partial Rescission, 73 Fed. Reg. 15,479 (March 24, 2008) (final results of administrative review for review period August 1, 2005 through July 31, 2006).

---

[2] The Bureau of Customs and Border Protection – part of the U.S. Department of Homeland Security – is commonly known as U.S. Customs and Border Protection, and is referred to as "Customs" herein.

[3] The record indicates that *pangasius* is more commonly known as "basa," "tra," "sutchi," "swai," and "Vietnamese catfish." *See* Renewed Motion for Default Judgment at 1; Thierry Declaration I ¶ 5; Antidumping Duty Order, 68 Fed. Reg. at 47,909.

In early July 2006, Customs sent Country Flavor Notices of Action with respect to 10 of the 13 entries at issue, stating Customs' intent to assess antidumping duties and demanding that Country Flavor pay antidumping duty cash deposits on those 10 entries at the 63.88% Vietnam-wide rate. *See* Thierry Declaration II, Exh. 3 (Notices of Action); *see also* Renewed Motion for Default Judgment at 2; Thierry Declaration II ¶ 8.[4] Thereafter, Customs liquidated the 10 entries, assessing

---

[4]The complaint, the Government's original Motion for Default Judgment, and the declaration filed in support of that motion all referred incorrectly to a single notice of action, when, in fact, the entries at issue were not covered by any single notice. *See* Complaint ¶ 13 (referring to a "notice of action" dated July 10, 2006); Motion for Default Judgment at 2 (same); Thierry Declaration I ¶ 8 (same); *compare* Thierry Declaration II, Exh. 3 (five Notices of Action).

Similarly, the complaint, the original Motion for Default Judgment, and the supporting declaration all stated incorrectly that notice was given as to 11 entries, when, as the Government now notes, the notices actually covered only ten. *See* Complaint ¶ 13 (stating that notice of action covered "11 of the 13 subject entries"); *id*. ¶¶ 14-15, 22, 25 (erroneously referring to 11 entries); Motion for Default Judgment at 2 (stating that notice of action covered "11 of the 13 subject entries"); Thierry Declaration I ¶ 8 (same); *compare* Thierry Declaration II, Exh. 3 (Notices of Action).

These errors (and the other similar errors identified below) are troubling for a number of reasons. As a threshold matter, by signing and filing the complaint in this action, counsel for the Government certified that, based on an "inquiry reasonable under the circumstances," "the factual contentions [set forth in the complaint] have evidentiary support." *See* USCIT R. 11(b)(3). In addition, the Customs official who executed the declaration submitted in support of the original Motion for Default Judgment did so "under penalty of perjury." *See* Thierry Declaration I at 3. It is now obvious that neither counsel for the Government nor the declarant adequately investigated the bases for their factual statements. Clearly, both failed to review the relevant documentation until after Country Flavor I. At a minimum, such failures undermine the credibility of the individuals at issue and undermine the court's confidence in its ability to rely on the Government's representations in this and other matters. And the potential repercussions could be far worse.

Further, the Government's numerous mistakes of fact serve to underscore the importance of requiring the Government to file with the court all relevant documentation from the penalty proceedings at the administrative level. Absent that mandate in Country Flavor I, the numerous errors in the complaint, in the original motion, and in the supporting declaration never would have come to light. *See* Country Flavor I, 36 CIT at ____ n.7, 825 F. Supp. 2d at 1303 n.7 (citing other

duties at the rate of 63.88%.[5] The other three of the 13 entries had been liquidated earlier, without regard to antidumping duties, in March and April 2007. *See* Thierry Declaration II ¶ 8.[6]

In late January 2011, Customs issued a pre-penalty notice to Country Flavor in the amount

---

cases concerning the filing with the court of the record compiled in penalty proceedings before Customs). Particularly if the court cannot rely on the accuracy of the factual representations of counsel and the statements of witnesses made under penalty of perjury, the court must be able to review the source documentation for itself.

The circumstances here are all the more egregious because the Government never acknowledges its errors. Incredibly, nowhere does the Renewed Motion for Default Judgment or the declarations filed in support of that motion give any indication that specific facts set forth therein are squarely at odds with (and, indeed, constitute corrections of) statements of fact that were made in the complaint, in the original Motion for Default Judgment, and in the declaration supporting the original motion. This lack of candor further undermines the court's confidence in the accuracy and reliability of representations made by the Government. It is beyond cavil that the court cannot be expected to compare a party's submissions with documents that the party filed earlier in order to determine for itself whether the party's factual representations are inconsistent.

Finally, the Government failed even to ensure that the facts – as corrected – were consistently incorporated into its Renewed Motion for Default Judgment. Thus, for example, the Renewed Motion correctly states that Customs notified Country Flavor that the agency intended to assess antidumping duties as to "10 of the 13 subject entries." *See* Renewed Motion for Default Judgment at 2. However, in the two sentences thereafter, the Government fails to reflect that the correct number of entries is 10, not 11. Specifically, the Government incorrectly states that Customs "demanded that Country Flavor pay antidumping duty cash deposits upon *those 11 entries*," and that Customs liquidated "the remaining *two* entries" without regard to antidumping duties. *See id.* at 2-3 (emphases added); *see also id.* at 13 (stating incorrectly that notices of action covered "11 of the 13 subject entries").

[5] In its original Motion for Default Judgment, the Government erroneously stated that, in June 2008, "Customs liquidated the *11* entries for which it [had] demanded antidumping duty cash deposits." *See* Motion for Default Judgment at 2 (emphasis added). The complaint reflects the same error. *See* Complaint ¶ 15.

[6] The complaint, the original Motion for Default Judgment, and the declaration filed in support of the original motion all stated, incorrectly, that *two* entries were liquidated without regard to antidumping duties. *See* Complaint ¶ 16; Motion for Default Judgment at 2; Thierry Declaration I ¶ 8.

of $617,562.00, based on Country Flavor's alleged negligence in declaring the fish as "broadhead" (rather than *pangasius*) in the entry summaries filed with Customs. *See* Thierry Declaration II, Exh. 4 (Pre-Penalty Notice); Thierry Declaration I ¶ 9. The pre-penalty notice stated that the actual loss of revenue totaled $308,781.23, and indicated that the proposed penalty of $617,562.00 represented "two times the loss of revenue." *See* Thierry Declaration II, Exh. 4 (Pre-Penalty Notice); *see also* Thierry Declaration I ¶¶ 9-10. The $308,781.23 figure does not appear in the complaint in this matter. *See* Complaint. However, the complaint does assert that Country Flavor is liable for "unpaid duties in the amount of $305,445.95." *See* Complaint ¶ 29; *see also id*. at ¶ 4 of demand for relief (asserting claim against Country Flavor for "lost duties in the amount of $305,445.95").

In early February 2011, Customs issued a notice of penalty and demand for payment to County Flavor. *See* Thierry Declaration II, Exh. 6 (Penalty Notice); Thierry Declaration I ¶ 11. Country Flavor failed to respond to the pre-penalty notice, the penalty notice, and the demand for payment, and has paid none of the antidumping duties and civil penalties owed on the 13 entries. *See* Complaint ¶ 18; Motion for Default Judgment at 3; Thierry Declaration I ¶¶ 12, 14.

International Fidelity Insurance Company served as Country Flavor's surety for the entries in question. Specifically, International Fidelity had issued a continuous entry bond to Country Flavor, promising to pay all duties, taxes, and fees owed during the period at issue in this action, up to a maximum of $100,000.00. *See* Complaint ¶ 6; Thierry Declaration I ¶ 13; Welty Declaration ¶ 4. Of that sum, the surety paid $6,582.22 for "antidumping duties and mandatory interest upon one of the 13 subject entries" before this action was commenced. *See* Complaint ¶ 19; *see also id*. ¶ 6; Welty Declaration ¶¶ 5-6. In addition, the surety had issued eight single transaction bonds for

entries of merchandise subject to this action, promising to pay all duties, taxes, and fees owed on the specified entries, up to varying amounts. *See* Complaint ¶ 7; Thierry Declaration I ¶ 13; *see also* Welty Declaration ¶ 12 (specifying the eight entries covered by single transaction bonds). According to the complaint, none of the single transaction bonds had been exhausted at the time this action was commenced; and the remaining single transaction bond coverage then totaled $174,908.67. *See* Complaint ¶ 7.

In early August 2011, International Fidelity made another payment to Customs, in the amount of $274,417.78, in settlement of the Government's claims against it in this action *and* to cover the surety's "liability upon certain single entry bonds that were not part of this action." *See* Renewed Motion for Default Judgment at 6.[7] The surety was subsequently dismissed with prejudice from this action. *See* Order (Sept. 16, 2011). In the meantime, the Clerk of the Court entered Country Flavor's default, and the Government filed its original Motion for Default Judgment. *See* Entry of Default (July 1, 2011); Motion for Default Judgment.

The analysis that follows summarizes both the disposition of the Government's original motion in Country Flavor I and the Government's response to that decision, as reflected in its Renewed Motion for Default Judgment.

---

[7]The Government's original Motion for Default Judgment and the declaration filed with it erroneously stated that International Fidelity's payment of $274,417.78 was in settlement of Customs' claims against it in this action. *See* Motion for Default Judgment at 3; Thierry Declaration I ¶ 13. Nowhere in its most recent papers does the Government acknowledge its earlier misstatements. In fact, the Government's most recent papers continue to confuse this point. *See* n.14, *infra* (noting that Government's papers continue to ignore the fact that surety's payment of $274,417.78 covered more than just the entries at issue in this action).

## II. Analysis

The Government's Renewed Motion for Default Judgment supplements the record evidence in this matter with additional declarations and supporting documentation, including the relevant notices of action, the pre-penalty notice, the penalty notice, and a domestic value worksheet. *See generally* Thierry Declaration II; Welty Declaration; Thierry Declaration II, Exh. 3 (Notices of Action); *id*., Exh. 4 (Pre-Penalty Notice); *id*., Exh. 5 (Domestic Value Worksheet); *id*., Exh. 6 (Penalty Notice). As discussed below, this additional evidence clarifies the bases for the sums that the Government seeks as a civil penalty for negligence and as outstanding, unpaid antidumping duties, and remedies the deficiencies in the Government's original motion as set forth in Country Flavor I.

### A. The Amount of the Civil Penalty

In its original Motion for Default Judgment, the Government sought a civil penalty for negligence in the amount of $617,562.00, which was asserted to represent "the statutory two times lost revenue maximum amount for negligence." *See* Motion for Default Judgment at 6; *see also id*. at 7; Country Flavor I, 36 CIT at ____, 825 F. Supp. 2d at 1305. As Country Flavor I explained (and as the Government's original motion acknowledged), the civil penalty statute caps the penalty for negligence in cases such as this at "the lesser of . . . (i) the domestic value of the merchandise, or (ii) two times the lawful duties . . . of which the United States [was] deprived." *See id*., 36 CIT at ____, 825 F. Supp. 2d at 1301; 19 U.S.C. § 1592(c)(3)(A); Motion for Default Judgment at 3-4. Country Flavor I ultimately concluded that default judgment could not enter as to the proposed civil penalty, both because the Government had failed to establish the total amount of antidumping duties

on the 13 entries at issue (*i.e.*, the amount of "the lawful duties . . . of which the United States [was] deprived"), and because the Government had failed to establish "the domestic value of the merchandise" at issue. *See* Country Flavor I, 36 CIT at ____, 825 F. Supp. 2d at 1305-07.

Specifically, as Country Flavor I explained, the declaration submitted with the Government's original Motion for Default Judgment attested that the antidumping duties on the 13 entries at issue (*i.e.*, the amount of lawful duties of which the U.S. was deprived) totaled $308,781.23. *See generally* Country Flavor I, 36 CIT at ____, 825 F. Supp. 2d at 1308 (*citing* Thierry Declaration I ¶ 10). However, that figure ($308,781.23) does not appear in the Government's complaint in this matter. *See* Complaint. And the Government's original motion failed to reconcile the $308,781.23 figure with the figure of $305,445.95, which the complaint seemed to indicate was the relevant sum. *See* Country Flavor I, 36 CIT at ____, 825 F. Supp. 2d at 1308; Complaint ¶ 29 (seeking "unpaid duties in the amount of $305,445.95"); *see also id*. at ¶ 4 of demand for relief (same).

Country Flavor I similarly explained that neither the Government's original Motion for Default Judgment nor the Thierry declaration submitted with that motion represented that a civil penalty in the amount of "two times the lawful duties . . . of which the United States [was] deprived" would be less than a penalty in the amount of "the domestic value of the merchandise." *See* Country Flavor I, 36 CIT at ____, 825 F. Supp. 2d at 1307. Indeed, as Country Flavor I further explained, the Government had proffered no evidence to establish the domestic value of the merchandise at issue. *See id*., 36 CIT at ____, 825 F. Supp. 2d at 1305-07.[8]

---

[8] As Country Flavor I explained, the complaint in this matter included a representation that the civil penalty proposed by the Government ("equal to two times the amount of lost revenue") would be "less than the *dutiable value* of the subject merchandise." *See* Country Flavor I, 36 CIT

In its Renewed Motion for Default Judgment, the Government has addressed both of these concerns.[9]  In particular, the Renewed Motion for Default Judgment explains that the $305,445.95 figure set forth in the Government's complaint was a typographical error.  *See* Renewed Motion for Default Judgment at 6.  The Renewed Motion further establishes indisputably that the antidumping duties on the 13 entries at issue totaled $308,781.23.  *See id.* at 5, 6; Welty Declaration ¶ 9; *see also* Thierry Declaration II ¶ 12; *id.*, Exh. 4 (Pre-Penalty Notice); *id.*, Exh. 6 (Penalty Notice); *accord*, Motion for Default Judgment at 3; Thierry Declaration I ¶ 10.  In addition, with its Renewed Motion, the Government has submitted evidence to document the domestic value of the merchandise at issue, which Customs calculates to be $874,497.21.  *See* Renewed Motion for Default Judgment at 7, 11-

---

at ____, 825 F. Supp. 2d at 1305 (*quoting* Complaint ¶ 27) (emphasis added).  However, neither the complaint nor the Government's original Motion for Default Judgment represented that a civil penalty in the amount of "two times the lawful duties . . . of which the United States [was] deprived" would be less than the "*domestic value* of the merchandise."  *See* 19 U.S.C. § 1592(c)(3) (emphasis added).  Nor did either the complaint or the original motion specify the domestic value of the merchandise.  *See* Country Flavor I, 36 CIT at ____, 825 F. Supp. 2d at 1305-07.

[9]The Renewed Motion for Default Judgment inexplicably continues to assert that the amount of the civil penalty to be imposed constitutes a "sum certain" within the meaning of Rule 55(b) of the Rules of the Court.  *See* Renewed Motion for Default Judgment at 9, 10; USCIT R. 55(b).  It is true that a claim for unpaid antidumping duties may constitute a "sum certain" – at least, absent seeming inconsistencies and disparities in the relevant evidence such as those identified in Country Flavor I.  *See* Country Flavor I, 36 CIT at ____ n.8, 825 F. Supp. 2d at 1304 n.8.  In contrast, a claim for a civil penalty can never constitute a "sum certain," due to the element of discretion to be exercised in determining whether any penalty is appropriate given the circumstances of a particular case, and, if so, the amount of that penalty (up to the maximum specified by statute).  *See generally id.*, 36 CIT at ____ n.8, 825 F. Supp. 2d at 1304 n.8 (*citing*, *inter alia*, 10 J. Moore *et al.*, Moore's Federal Practice § 55.32[2][a], p. 55-47 (3d ed. 2011)); *see also* Renewed Motion for Default Judgment at 11 (stating that "a penalty of the statutory maximum is *within the Court's discretion*") (emphasis added).

12[10]; *see also* Thierry Declaration II ¶ 10 & n.1; *id*., Exh. 5 (Domestic Value Worksheet).[11]

Based on the record as it has been supplemented, it is clear that, as the Renewed Motion for Default Judgment states, a civil penalty in the amount of $617,562.46 (*i.e.*, two times $308,781.23, which is the total "lawful duties . . . of which the United States [was] deprived") – rounded down to $617,562.00 – is less than "the domestic value of the merchandise" (whether that value is $874,497.21 or $876,497.21). *See* Renewed Motion for Default Judgment at 6, 7, 11-12; Thierry Declaration II ¶¶ 10, 12; Welty Declaration ¶ 9. Accordingly, given the determination in <u>Country Flavor I</u> that Country Flavor negligently violated 19 U.S.C. § 1592(a) and failed to pay applicable antidumping duties, and based on the Government's Renewed Motion for Default Judgment, the Government is entitled to the requested default judgment for a civil penalty for negligence in the

---

[10]In its Renewed Motion for Default Judgment, the Government erroneously states that the domestic value of the merchandise at issue is $876,497.21. *See* Renewed Motion for Default Judgment at 7. However, the second Thierry Declaration (which accompanied the Renewed Motion) explains that Customs' domestic value worksheet reflects an error, and that the domestic value of the merchandise is, in fact, two thousand dollars less – that is, $874,497.21. *See* Thierry Declaration II ¶ 10 n.1. In any event, as noted herein, whether the actual domestic value of the merchandise is $876,497.21 or $874,497.21, the bottom line is the same. In either case, a penalty in the amount of two times "the lawful duties . . . of which the United States [was] deprived" is less than "the domestic value of the merchandise."

[11]<u>Country Flavor I</u> highlighted the issue of the appropriate methodology to be used in determining "domestic value." *See* <u>Country Flavor I</u>, 36 CIT at ____ n.9, 825 F. Supp. 2d at 1305 n.9. According to the Government's Renewed Motion for Default Judgment and supporting documentation, Customs here has calculated "domestic value" in accordance with <u>Pan Pacific Textile</u>, as "the sum of: freight on board (FOB) value; ocean freight; marine insurance; all applicable duties (including antidumping duties); merchandise processing fees; harbor maintenance fees; and United States profit and general expense (P&GE)." *See* Renewed Motion for Default Judgment at 7; *see also id*. at 11-12; Thierry Declaration II ¶ 11; *id*., Exh. 5 (Domestic Value Worksheet); <u>United States v. Pan Pacific Textile Group, Inc.</u>, 30 CIT 138, 139-40 & n.2 (2006) (discussing definition of "domestic value," and citing 19 C.F.R. § 162.43(a)).

sum of $617,562.00. *See* 19 U.S.C. § 1592(c)(3).[12]

### B. The Amount of Unpaid Antidumping Duties

In addition to a civil penalty in the amount of $617,562.00, the Government's original Motion for Default Judgment also sought a default judgment for $34,363.45 in outstanding unpaid antidumping duties (together with prejudgment interest) as lost revenue under 19 U.S.C. § 1592(d). *See generally* Country Flavor I, 36 CIT at ____, 825 F. Supp. 2d at 1308; Motion for Default Judgment at 6, 7. According to the original motion, $34,363.45 represented the balance of the antidumping duties remaining "after subtracting the amount obtained through settlement with

---

[12]As the Government observes in its Renewed Motion, "Country Flavor has done nothing meriting the Court's exercise of its discretion to impose a reduced penalty." *See* Renewed Motion for Default Judgment at 11. There is no record evidence that might justify some degree of mitigation. *See id.* at 11 n.3 (noting that "the record lacks . . . evidence relating to the factors identified for determining penalty amounts"); *see generally* Country Flavor I, 36 CIT at ____ n.7, 825 F. Supp. 2d at 1303 n.7 (directing that any renewed motion for default judgment should include "all evidence that may bear on aggravating or mitigating circumstances" concerning the amount of the civil penalty); *id.*, 36 CIT at ____ n.8, 825 F. Supp. 2d at 1304 n.8 (discussing United States v. Complex Machine Works Co., 23 CIT 942, 947-50, 83 F. Supp. 2d 1307, 1313-15 (1999) (identifying factors relevant to determining appropriate amount of penalty); 19 C.F.R. Part 171, App. B §§ (G)-(H) (non-exclusive list of mitigating factors and aggravating factors, in Customs "Guidelines for the Imposition and Mitigation of Penalties for Violations of 19 U.S.C. 1592")).

The Government goes so far as to argue that "the facts and circumstances with respect to Country Flavor's recent behavior merit *a higher penalty*." *See* Renewed Motion for Default Judgment at 11 (emphasis added); *see also id.* at 11 n.3 (asserting that "the circumstances here: dissolution [of Country Flavor] in light of [the] pre-penalty notice; and the operation of the company by the same president from the same address in the apparent same line of business as Country Flavor, evince a lack of cooperation and should merit an enhanced penalty"); *id.* at 13 (emphasizing that Country Flavor cannot "simply walk away from liability by transferring assets to its insiders and then dissolving"). However, the civil penalty imposed here – $617,562.46 – is the statutory maximum permitted for acts of negligence. *See* 19 U.S.C. § 1592(c)(3)(A) (capping penalty for negligence at "the lesser of . . . (i) the domestic value of the merchandise, or (ii) two times the lawful duties . . . of which the United States [was] deprived").

International Fidelity from the total amount of lost revenue." *See id.* at 6; *see generally* Country Flavor I, 36 CIT at \_\_\_\_, 825 F. Supp. 2d at 1308.

As Country Flavor I explained, however, the Government's calculation of an outstanding balance of $34,363.45 in antidumping duties was undermined by the seeming discrepancy between the $305,445.95 figure specified in the Government's complaint and the $308,781.23 figure set forth in the original Motion for Default Judgment (which appeared nowhere in the complaint). *See generally* Country Flavor I, 36 CIT at \_\_\_\_, 825 F. Supp. 2d at 1308; *see also* section II.A, *supra* (discussing apparent discrepancy between $305,445.95 figure in complaint and $308,781.23 figure set forth in original Motion for Default Judgment). Country Flavor I concluded that the unexplained discrepancy between the two figures precluded entry of default judgment, and directed that any renewed motion for default judgment address the issue. *See* Country Flavor I, 36 CIT at \_\_\_\_ & n.10, 825 F. Supp. 2d at 1308 & n.10. In addition, Country Flavor I directed that any renewed motion for default judgment identify and explain the allocation of all payments made by the surety, and otherwise detail and support Customs' claim as to the amount of unpaid antidumping duties. *See id.*, 36 CIT at \_\_\_\_ n.10, 825 F. Supp. 2d at 1308 n.10.

Now seeking unpaid antidumping duties in the amount of $28,984.75 (plus prejudgment interest), the Government's Renewed Motion for Default Judgment addresses each of the relevant issues raised in Country Flavor I. *See generally* Renewed Motion for Default Judgment at 5-6, 10, 14; Welty Declaration ¶ 15. As discussed above, the Renewed Motion makes it clear that the $305,445.95 figure set forth in the complaint was in error, and that the total antidumping duties on the 13 entries amounted to $308,781.23. *See* section II.A, *supra*. In addition, the Government's

Renewed Motion acknowledges and specifically accounts for two payments made by the surety which reduced the outstanding balance of antidumping duties on the 13 entries at issue here. *See generally* Renewed Motion for Default Judgment at 5-6; Welty Declaration ¶¶ 6-10, 15.

In particular, the Government explains that, prior to the commencement of this action, International Fidelity tendered payment of $6,582.22 with respect to one of the 13 subject entries (specifically, entry # GX5-99118484). *See* Renewed Motion for Default Judgment at 5; Welty Declaration ¶ 6; *see also* Complaint ¶ 6 (stating that, as of date of filing of complaint, "$6,582.22 [of surety's continuous entry bond] has been exhausted); *id*. ¶ 19 (stating that, as of date of filing of complaint, surety "has paid $6,582.22 in antidumping duties and mandatory interest upon one of the 13 subject entries").[13] Because the surety's payment was not submitted within 30 days of Customs' bill, additional interest of $43.42 had accrued by the time payment was made. *See* Renewed Motion for Default Judgment at 5; Welty Declaration ¶¶ 5-6, 8. Pursuant to Customs' regulations, the surety's payment of $6,582.22 was applied first to the accrued interest of $1,246.94, and then to the principal ($5,378.70), leaving a remaining balance of $43.42 in antidumping duties outstanding as to entry # GX5-99118484. *See* Renewed Motion for Default Judgment at 5; Welty Declaration ¶ 7 (*citing* 31 C.F.R. § 901.9(f); 19 C.F.R. § 24.3a(c)(4)); *id*. ¶ 8. In its Renewed Motion for Default Judgment, the Government advises that it does not now seek to recover the outstanding $43.42, and that it "consider[s] all lost duties ($5,378.70) and interest upon entry number GX5-99118484 to be paid." *See* Renewed Motion for Default Judgment at 5.

---

[13]The figure of $6,582.22 reflected $5,378.70 in antidumping duties, and $1,203.52 in interest that had accrued as of the date of Customs' bill. *See* Welty Declaration ¶ 5.

The Renewed Motion for Default Judgment similarly accounts for International Fidelity's later payment, in the amount of $274,417.78. The Government explains that the $274,417.78 payment was made not only to settle the instant action as against the surety, but also to satisfy the surety's liability under certain single entry bonds that were not part of this action. *See* Renewed Motion for Default Judgment at 6.[14] Specifically, according to the Government, International Fidelity's "total bonding upon the 13 subject entries" amounted to only $268,326.45. *See id*. at 6 n.1 (*citing* Complaint at ¶ 5 of demand for relief (seeking $268,326.45 from surety for lost duties)).[15] For purposes of this litigation, however, the Government opted to allocate the entirety of the surety's $274,417.78 payment against the antidumping duties at issue here, "providing [Country Flavor] with the benefit of the doubt upon this issue." *See* Renewed Motion for Default Judgment at 6 & n.1; *see also id*. at 6 n.2 (stating that "applying [Customs'] standard allocation methodology would have resulted in a higher lost revenue amount than the $28,984.75 that [the Government] seek[s] here"); *id*. at 10 (emphasizing that "the allocation of the surety settlement favors Country Flavor").

---

[14]In its Renewed Motion for Default Judgment, the Government expressly and unequivocally states that International Fidelity's $274,417.78 payment was made not only to "settle this action," but, in addition, to cover the surety's "liability upon certain single entry bonds that were not part of this action." *See* Renewed Motion for Default Judgment at 6. Elsewhere, however, the Government repeatedly – and incorrectly – continues to assert that the $274,417.78 was paid to settle this action. *See*, *e.g.*, *id*. at 3 (stating that "[t]he Government . . . settled with International Fidelity for $274,417.78"); *id*. at 5 (stating that surety "settled [the Government's] claim against it in this action for $274,417.78"); Welty Declaration ¶ 10 (attesting that surety "paid $274,417.78 to settle the Government's claims against International Fidelity in this action"); Thierry Declaration II ¶ 15 (same).

[15]*See also* Complaint ¶ 6 (stating that, as of date of filing of complaint, coverage remaining under the surety's continuous entry bond coverage for entries at issue totaled $93,417.78); *id*. ¶ 7 (stating that, as of date of filing of complaint, surety's single transaction bond coverage for entries at issue totaled $174,908.67).

In sum, International Fidelity's payment of $5,378.70 in antidumping duties on entry # GX5-99118484 reduced the total unpaid antidumping duties on the 13 entries at issue from $308,781.23 to $303,402.53.  *See* Renewed Motion for Default Judgment at 6.  And reducing that $303,402.53 figure by the surety's subsequent payment of $274,417.78 leaves a remaining balance of $28,984.75 – the amount of lost revenue that the Government now seeks pursuant to 19 U.S.C. § 1592(d).  *See id*. at 6, 10, 14; Welty Declaration ¶ 15.

In light of the determination of liability in Country Flavor I, and based on the Government's Renewed Motion for Default Judgment (as outlined above), the Government is entitled to the requested default judgment for lost revenue in the amount of $28,984.75.  In addition, as explained in Country Flavor I, the Government is entitled to an award of prejudgment interest on that sum.  *See generally* Country Flavor I, 36 CIT at ____, 825 F. Supp. 2d at 1302 (and authorities cited there) (summarizing legal basis for award of prejudgment interest on unpaid antidumping duties).

### III.  Conclusion

For the reasons set forth above, the Renewed Motion for Default Judgment must be granted in favor of the Government and against Country Flavor for a civil penalty in the amount of $617,562.00, as well as $28,984.75 in unpaid antidumping duties (together with prejudgment interest on the latter sum).

Judgment will enter accordingly.

                                                          /s/ Delissa A. Ridgway
                                                       Delissa A. Ridgway, Judge

Decided:  May 22, 2012
          New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

| | | |
|---|---|---|
| UNITED STATES, | : | |
| *Plaintiff*, | : | |
| v. | : | Court No. 11-00138 |
| COUNTRY FLAVOR CORP., | : | |
| *Defendant*. | : | |

## **JUDGMENT**

Upon consideration of Plaintiff's Renewed Motion for Entry of Default Judgment, it is hereby

ORDERED that Plaintiff's Motion is granted; and it is further

ORDERED that judgment is entered in favor of the United States and against Country Flavor for a civil penalty in the amount of $617,562.00, and $28,984.75 in unpaid antidumping duties, as well as prejudgment interest on the latter sum.

                                                                                              /s/ Delissa A. Ridgway
                                                                                                Delissa A. Ridgway, Judge

Dated: May 22, 2012
        New York, New York